FILED

JUL - 1 2009

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

ANTHONY DELOATCH,

        Plaintiff,

v.                              ACTION NO. 4:08cv94

MICHAEL J. ASTRUE,
Commissioner of the Social
Security Administration,

        Defendant.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Anthony Deloatch ("Deloatch"), brought this action under Sections 216(i) and 223 of the Social Security Act, 42 U.S.C. § 405(g), 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI") under the Social Security Act (the "Act").

This action was referred to the undersigned United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), by order of reference filed January 27, 2009. For the reasons expressed herein, the Court RECOMMENDS that the Commissioner's decision be UPHELD and the case be DISMISSED.

### I. PROCEDURAL BACKGROUND

On February 5, 2003, Deloatch filed an application for SSI alleging an onset of disability as of November 19, 1998, due to a

heart problem, high blood pressure, and Hepatitis C. (R.[1] 72-73, 80-81.) Deloatch's application was denied by the Social Security Administration initially on June 2, 2003 (R. 53), and upon reconsideration on April 13, 2004.[2] (R. 61.) On June 1, 2004, Deloatch requested a hearing before an Administrative Law Judge ("ALJ") of the Social Security Administration. (R. 64.) On May 11, 2005, a video teleconference hearing was held, with Deloatch and his attorney in Newport News, Virginia, and the ALJ in Norfolk, Virginia. (R. 866-83.) Deloatch was represented by counsel at the hearing. (R. 868.) An independent vocational expert, Linda Augins, was present at the hearing and testified. (R. 881.) On September 22, 2005, the ALJ issued a written decision finding that Deloatch was not disabled under the Act because he had the residual functional capacity ("RFC") to make an adjustment to jobs that exist in significant numbers in the national economy. (R. 692-700.)

On November 21, 2005, Deloatch requested review of the ALJ's decision by the Appeals Council of the Office of Disability

---

[1]  "R." refers to the transcript of the administrative record of proceedings relating to this case.

[2]  Plaintiff previously filed an application for SSI and Disability Insurance Benefits (DIB) on June 30, 1999, which was denied by an ALJ following a hearing on May 4, 2001. (R. 18.) On January 25, 2002, the Appeals Council denied plaintiff's request for review of the decision. Id. There is no indication that further appeal was filed. Id. However, due to the lapse in time, the prior file has been destroyed. Id.

Adjudication and Review ("Appeals Council"). (R. 38-44.) On July 16, 2007, the Appeals Council remanded the case to the ALJ for further proceedings. (R. 701-704.)

Pursuant to the remand order, the ALJ held a new hearing in Newport News, Virginia on October 9, 2007. (R. 884.) Deloatch was represented at the hearing by the same counsel as at the prior hearing, and an independent vocational expert, Barbara K. Byers, testified. (R. 884-96.) On November 19, 2007, the ALJ issued a decision finding Deloatch was not disabled within the meaning of the Act because Deloatch had the RFC to perform sedentary work. (R. 15-32.)

On January 17, 2008, Deloatch again requested review of the ALJ's decision by the Appeals Council. (R. 14.) The Appeals Council denied Deloatch's request for review on July 10, 2008, stating that it found no reason to review or change the ALJ's decision. (R. 8-11.) This makes the ALJ's decision the "final decision" of the Commissioner subject to judicial review here, pursuant to 42 U.S.C. § 405(g). 20 C.F.R. § 416.1481.

Deloatch brought the instant action seeking judicial review of the decision of the Commissioner denying his claims for SSI. Deloatch filed the instant complaint on September 9, 2008, which Defendant answered on January 22, 2009. Deloatch filed a motion for summary judgment with a memorandum in support on February 27, 2009. Defendant filed a motion for summary judgment in opposition

to Deloatch's motion for summary judgment with a memorandum in support on March 24, 2009. The Court received no response from Deloatch to Defendant's motion for summary judgment. As neither counsel in this case has indicated special circumstances requiring oral argument in this matter, the case is deemed submitted for decision based on the memoranda.

## II.  **FACTUAL BACKGROUND**

Deloatch is a fifty (50) year old male, who was thirty-nine (39) at the time of his alleged onset of disability and forty-eight (48) at the time of the ALJ's November 19, 2007 decision. (R. 31.) Deloatch has a general equivalency diploma and past work experience as a laborer. (R. 82, 87, 107-114, 871-872.) Deloatch alleges an onset of disability as of November 19, 1998, due to a heart problem, high blood pressure, and Hepatitis C. (R. 72- 73, 80-81.)

The ALJ found that, at the time of the October 9, 2007 hearing, Deloatch suffered from hypertension, history of congestive heart failure, chronic obstructive pulmonary disease, depression / anxiety, and lumbar degenerative disc disease, all of which the ALJ found to be severe impairments. (R. 21.) The ALJ found that Deloatch's other impairments were non-severe. (R. 22-23.) The ALJ, however, found that Deloatch's severe impairments did not meet or exceed one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (R. 23.) The ALJ then found that Deloatch had the RFC to perform sedentary work and could work

4

in unskilled occupations such as small parts assembler or a food and beverage clerk. (R. 32.) The ALJ found that Deloatch could not return to his past work as a construction laborer because he was limited to sedentary work with non-complex job tasks. (R. 31.) However, the ALJ found that there are a significant number of jobs in the national economy that Deloatch could perform. (R. 31-32.) Accordingly, the ALJ held that Deloatch was "not disabled" within the meaning of the Act. (R. 32.)

### III. STANDARD FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For the evidence to present a "genuine" issue of material fact, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Facts are deemed material if they might affect the outcome of the case. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). In other words, the moving party's submission must foreclose the possibility of the existence of facts from which it would be open to a jury to make inferences favorable to the non-movant. Id.

In deciding a summary judgment motion, the Court must view the record as a whole and in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.,

763 F.2d 604, 610 (4th Cir. 1985). "If, however, 'the evidence is so one-sided that one party must prevail as a matter of law,' we must affirm the grant of summary judgment in that party's favor." O'Connor v. Consol. Coin Caterers Corp., 56 F.3d 542, 545 (4th Cir. 1995) (quoting Anderson, 477 U.S. at 251-52). Moreover, summary judgment must be granted where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial," Celotex, 477 U.S. at 322, as the non-moving party is required to "set forth specific facts showing that there is a genuine issue for trial" with respect to that element. Fed. R. Civ. P. 56(e).

When confronted with cross-motions for summary judgment, "the standards upon which the Court evaluates the motions for summary judgment do not change simply because the parties present cross-motions." Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991). "[T]he Court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).

## IV. STANDARD FOR REVIEW OF THE COMMISSIONER'S DETERMINATION

The Commissioner ultimately held that Deloatch was not under a disability within the meaning of the Act. Under 42 U.S.C.

6

§ 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g); Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam) (superceded in non-relevant part by 20 C.F.R. §§ 404.1517(d)(2), 416.927(d)(2)); Hays v. Sullivan, 907 F.2d 1453 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hunter, 993 F.2d at 34 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. Id. (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner has the duty to make findings of fact and resolve conflicts in the evidence. Hays, 907 F.2d at 1453 (citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence or of the Commissioner's findings. Schweiker, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Hays, 907 F.2d at

7

1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or on the Commissioner's designate, the ALJ)." Craig, 76 F.3d at 589 (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. Richardson v. Perales, 402 U.S. 389, 401 (1971). The issue before this Court, therefore, is not whether Deloatch is disabled, but whether the Commissioner's finding that Deloatch is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See id.; Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) ("[A] factual finding by an [ALJ] . . . is not binding if it was reached by means of an improper standard or misapplication of law.").

### V. **ANALYSIS**

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[3] which can be expected to result in death or which has lasted or can

---

[3]A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); <u>see also</u> 42 U.S.C. § 423(d)(1)(a). To meet this definition, the claimant must have a severe impairment that makes it impossible to do previous work or any other substantial gainful activity[4] that exists in the national economy. 20 C.F.R. §§ 404.1505(a), 416.905(a); <u>see also</u> 42 U.S.C. § 423(d)(2)(A).

## A. <u>Sequential Disability Analysis</u>

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth at 20 C.F.R. § 416.920. <u>See</u> <u>Hall v. Harris</u>, 658 F.2d 260, 264-65 (4th Cir. 1981). Under this process, the ALJ must determine in sequence:

(1) Whether the claimant is engaged in substantial gainful activity (i.e., whether the claimant is working). If so, the claimant is <u>not</u> disabled and the inquiry is halted.

(2) Whether the claimant has a severe impairment. If not, the claimant is <u>not</u> disabled and the inquiry is halted.

(3) Whether the impairment meets or equals the medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a

---

[4] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

finding of disability without considering vocational criteria. If so, the claimant _is_ disabled and the inquiry is halted.

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is _not_ disabled and the inquiry is halted.

(5) Whether the claimant is able to perform any other work considering both his residual functional capacity[5] and his vocational abilities. If so, the claimant is _not_ disabled.

### 1. **Steps One Through Three**

In this case, the ALJ decided at step five of the analysis that Deloatch was not disabled. At step one of the analysis, the ALJ determined that Deloatch had not engaged in substantial gainful activity since February 28, 2003. (R. 21.) At step two, the ALJ determined that Deloatch's hypertension, history of congestive heart failure, chronic obstructive pulmonary disease, depression / anxiety, and lumbar degenerative disc disease are severe impairments. (R. 21.) At step three, the ALJ found that Deloatch did not have a severe impairment or combination of impairments that meet or medically equal one of the impairments listed in 20 C.F.R.,

---

[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptoms (e.g., pain). _See_ 20 C.F.R. § 416.945(a)(1).

Part 404, Subpart P, Appendix 1.  (R. 23.)

## 2. RFC Determination

Prior to step four, the ALJ determined Deloatch's RFC upon consideration of the entire record. (R. 21.)  Based on the objective medical evidence and Deloatch's testimony, the ALJ determined that Deloatch retained the RFC to perform sedentary work. (R. 24.)  Specifically,

> Mr. Deloatch is able to lift/carry 10 pounds occasionally and frequently. During the course of an 8 hour work day he is capable of sitting up for 6 hours and standing/walking for up to 6 hours. The claimant has non-exertional limitations. Due to his cardiac/pulmonary problems, he is precluded from working in extremes of heat and cold. Due to depression, Mr. Deloatch is precluded from performing complex/detailed tasks and from having frequent contact with the general public.

(R. 24.)

### a.  Deloatch's Claims

Deloatch argues that the ALJ erroneously assessed his residual functional capacity for four reasons: (1) the ALJ failed to set forth a narrative discussion as required by Social Security Ruling 96-8p; (2) the ALJ did not include moderate limitations in concentration, persistence, or pace in his RFC assessment; (3) the ALJ did not evaluate evidence regarding Deloatch's need for leg elevation; and (4) the ALJ did not evaluate the opinion from Dr. Mumford stating that plaintiff had a Global Assessment Function (GAF) of 50.  Plaintiff's Mem. at 7.  The Court will take each

11

argument in turn.

Regarding Deloatch's first argument, Deloatch claims that the ALJ failed to set forth a narrative discussion describing how the evidence supported each conclusion and "failed to build an accurate and logical bridge from the evidence to his conclusion." Plaintiff's Mem. at 7.   Under Social Security Rule 96-8p, a residual functional capacity assessment must include a narrative discussion describing how the evidence supports each conclusion by citing specific medical and non-medical facts in the record. Social Security Rule 96-8p.   In so doing, the ALJ must engage in a function by function analysis, discussing the claimant's functional limitations discernable from the relevant evidence in the record. Id.   In other words, the form of the ALJ's analysis is that the ALJ examines the relevant evidence in the record, determines from that evidence whether the claimant has any functional limitations, and, if any functional limitations are found, factors those limitations into the residual functional capacity assessment.   See id.

Contrary to Deloatch's contentions, the ALJ exhaustively discussed the evidence of record and then explained that although he did not doubt Deloatch was limited by his impairments, the record evidence did not support a conclusion that he was precluded from all work activity. (R. 30.) The ALJ adequately followed the form of analysis required by Social Security Ruling 96-8p.   The ALJ first examined and discussed Deloatch's own testimony and concluded

12

that Deloatch's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," but that Deloatch's statements regarding the intensity, persistence, and limiting effects of the symptoms were "not entirely credible." (R. 26.) The ALJ next discussed Deloatch's medical history, thoroughly examining the medical evidence in the record. (R. 26-30.) Specifically,

> Mr. Deloatch has a history of significant hypertension and congestive heart failure. However, he has had good response to medications. To reiterate, in December 2002 an echocardiogram showed an ejection fraction of 40 percent. [R. 225] In March 2004 an echocardiogram showed an ejection fraction of 50 percent with normal hemodynamics. [R. 441-442] In June 2004 a Pulmonary Function Study showed moderate chronic obstructive pulmonary disease. The medical evidence is indicative of mild to moderate limitations of cardiac and pulmonary function. Albeit Mr. Deloatch has access to free medical care through the VAMC, he has not followed up with treatment. [R. 202, 314, 351, 649] This is not consistent with allegations of severe symptoms.

(R. 30.) Taking into account Deloatch's age, education, work experience, and residual functional capacity, the ALJ then found that Deloatch could perform light work; specifically, Deloatch was able to occasionally and frequently lift and carry ten pounds, sit at least six hours out of eight and stand and/or walk six hours out of eight. (R. 24.) Thus, the ALJ properly considered Deloatch's non-compliance with treatment in formulating his RFC assessment and found that his limitations were not as disabling as alleged. The

13

ALJ did all of this through a narrative discussion. Therefore, the Court disagrees with Deloatch's first argument and FINDS that the ALJ fully complied with Social Security Ruling 96-8p.

Second, Deloatch claims that the ALJ failed to include moderate limitations in concentration, persistence, and pace in his RFC assessment. Deloatch argues that the ALJ found Deloatch had limitations in concentration in step three, but then he did not include these limitations in his RFC assessment. Plaintiff's Mem. at 7. However, the ALJ specifically evaluated Deloatch's mental function and the impact it had on his work-related abilities. The ALJ noted that although Deloatch complained of depression and anxiety, his mental status examinations were essentially normal except for a slight decrease in concentration and memory. (R. 30.) In September of 2004, a mental status examination noted that Deloatch's mood was "dragging" and his concentration was decreased. R. 29). However, the rest of that same mental status examination report also noted results which fell within a normal range. (R. 29.) Additionally, in July of 2005, Dr. Mark G. Berger reported that Deloatch's concentration, attention, and memory were within normal limits. (R. 29.) Although Deloatch reported that he was anxious and depressed, Dr. Berger stated that it appeared Deloatch was exaggerating the extent of his anxiety and depression. (R. 29.) Thus, contrary to Deloatch's contentions, the ALJ considered Deloatch's limitations in concentration and limited him to working

14

in simple, unskilled work which does not require a large amount of concentration. (R. 24.)

Third, Deloatch argues that the ALJ did not evaluate evidence regarding Deloatch's need for leg elevation. Plaintiff's Mem. at 7. Deloatch concedes that the ALJ properly considered his testimony regarding the elevation of his legs before concluding that it was not entirely credible. (R. 26.) However, Deloatch argues that the ALJ failed to evaluate the opinion of Dr. Edwin Malixi, Deloatch's treating physician, who reported that Deloatch needed to elevate his legs to a height of three feet fifty percent of the time throughout an eight hour day. Plaintiff's Mem. at 8; (R. 428, 433.) This Court disagrees with Deloatch's contentions and finds that the ALJ properly considered the opinion of Dr. Malixi. Specifically, the ALJ stated:

> As for the opinion evidence, the undersigned
> has considered the Cardiac Residual Functional
> Capacity Questionnaire, dated August 9, 2004,
> and the Physical Residual Functional Capacity
> Questionnaire, dated August 9, 2004, from a
> treating source, which indicate that the
> claimant is not capable of performing even
> sedentary work. [R. 428, 433] The undersigned
> accords those opinions no weight, as they are
> not consistent with only mild to moderate
> findings on testing.

(R. 30.)

Fourth, Deloatch argues the ALJ failed to properly evaluate the opinion of the Veterans Administration psychological examiner,

15

Dr. Marinell Miller Mumford[6], who found that Deloatch suffered from major depressive disorder, chronic and severe, and a generalized anxiety disorder. (R. 482.) Dr. Mumford stated that based upon his condition, Deloatch had a GAF of 50. (R. 482.) Deloatch correctly points out that the ALJ erroneously noted that a GAF of 50 was commensurate with "moderate" symptoms when in fact the score is commensurate with "serious" symptoms. (R. 29,482); Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, American Psychiatric Association, 1994 p.32. However, the Defendant also correctly notes that although a score of 50 is commensurate with "serious" symptoms, it is on the highest end of that scale, as "moderate" symptoms start at a GAF of 51. DSM-IV at 32. Nevertheless, this Court finds the ALJ's error to be slight and insignificant in light of his overall evaluation of Dr. Mumford's opinion. The ALJ went on to discuss additional evidence on the record which is inconsistent with a GAF score indicating "serious" symptoms. (R. 29-30.) Notably, in June of 2005, Dr. Mark G. Berger completed a report of consultative examination and concluded that Deloatch's GAF was 65, which is indicative of mild symptoms. (R. 29, 687) The ALJ then went on to conclude:

> While the claimant complains of severe
> depression and anxiety, his mental status
> examinations have essentially been within

---

[6] Deloatch's Global Assessment of Function was administered and signed by Deborah S. Vick, a psychology doctoral intern. The results were co-signed by Dr. Marinell Miller Mumford. (R. 482)

> normal limits, with the exception of a
> decrease in concentration and mild memory
> impairment. Mr. Deloatch has been treated with
> medication and psychotherapy. He functions
> well.

(R. 30.) Therefore, the Court finds the ALJ properly evaluated the severity of Deloatch's mental impairment.

This is a case where there appears to be substantial evidence in the record to support either a finding that Deloatch is disabled or a finding that he is not disabled within the meaning of the Act. On the one hand, Deloatch's own testimony, if taken as credible, and the opinions of Deloatch's treating physician, Dr. Malixi, and psychologist, Dr. Mumford, can support a finding that Deloatch is disabled. On the other hand, the other evidence in the record can support a finding that Deloatch is not disabled. Given this conflicting evidence, the ALJ determined that Deloatch was not disabled because Deloatch could perform sedentary work. The Court here reviewed that determination only for substantial evidence. Hunter, 993 F.2d at 34.

Contrary to Deloatch's contentions, the ALJ exhaustively discussed the evidence in the record and then explained that although he did not doubt that the plaintiff was limited by his impairments, the record evidence did not support a conclusion that he was precluded from all work activity. (R. 30) Thus this Court concludes the ALJ's determination that Deloatch had the RFC to perform sedentary work is supported by substantial evidence.

17

### 3.  Steps Four and Five

The ALJ concluded at step four that Deloatch could not return to his past relevant work.  (R. 31.)  The ALJ then found at step five that Deloatch's medical condition did not prevent him from finding and performing sedentary work.  (R. 31-32.)  The ALJ took into consideration Deloatch's RFC, age, education, and work experience along with the Medical-Vocational Guidelines of Appendix 2 of the regulations, 20 C.F.R. Subpart P, Regulations No. 4.  (R. 31.)  The ALJ also took testimony from an independent vocational expert who stated that there were a significant number of unskilled, sedentary jobs existing in the national and local economies which Deloatch could perform.  (R. 31-32.)

Deloatch argues that the ALJ erroneously relied upon the testimony of the vocational expert.  Plaintiff's Mem. at 12.  To that end, Deloatch argues that the medical evidence and Deloatch's own testimony demonstrate that there are no jobs which exist in the national economy that the claimant can perform.  Id. at 13. Specifically, Deloatch argues that the ALJ erred by disregarding the opinion of Deloatch's treating physician, Dr. Malixi, and the opinion of Dr. Mumford, the VA's psychological examiner, when posing his hypothetical question to the vocational expert.  Id.

Deloatch's arguments are without merit, because the ALJ had sufficient grounds for determining Deloatch's impairments and the resulting effect on his ability to work, including his

determination of the appropriate weight to give to Dr. Malixi's and Dr. Mumford's opinions, as discussed _supra_.  In doing so, the ALJ posed a series of hypothetical questions to the vocational expert that were consistent with the ALJ's findings of Deloatch's limitations.  The hypothetical individual, as described by the ALJ, was forty-eight years old, with a GED and past work experience as a laborer, who could only occasionally perform grasping, pushing, and pulling, who needed sedentary work and should avoid extremes of heat and cold as well as complex or difficult tasks.  (R. 892.) The vocational expert responded that such an individual could perform the job of an automatic grinding machine operator or a sedentary assembler, and that such jobs existed in significant numbers in the national and local economies. (R. 893.)  Examination of the vocational expert by Deloatch's counsel revealed that a job would not exist for an individual who has the age, education, and work history of the claimant but would have to miss one or more days a week because of medical impairments. (R. 894)  Additionally, the vocational expert testified that all potential jobs would be eliminated if a condition that the claimant must raise his legs three feet for fifty percent of the day were added to the original hypothetical. (R. 895)

It appears to the Court that the vocational expert's testimony on the additional points was responsive to the questions posed by Deloatch's counsel, but pertained to an individual with greater

19

limitations than those found credible by the ALJ. Thus, the ALJ's decision not to rely on this portion of the vocational expert's testimony in informing his decision was not in error. See Brobst v. Barnhart, 96 Fed. Appx. 824, 827 (3d Cir. 2004) (unpublished decision); Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989).

Based on the foregoing, the Court FINDS that there is substantial evidence in the administrative record to support the ALJ's consideration of the vocational expert's testimony, and that the ALJ's decision to do so was reached based upon a correct application of the relevant law.

## B. **Conclusion**

The Court FINDS that the ALJ's decision was based upon substantial evidence. In particular, the ALJ throughly reviewed the entire record, properly assigned weight to Deloatch's treating physician, properly assigned weight to the State Agency physicians, and properly considered and weighed Deloatch's testimony.

## VI . **RECOMMENDATION**

For the foregoing reasons, the Court recommends that the final decision of the Commissioner be UPHELD, that defendant's motion for summary judgement be GRANTED, and that plaintiff's motion for summary judgement be DENIED. Accordingly, the Court recommends that the case be DISMISSED.

## VII . **REVIEW PROCEDURE**

By copy of this Report and Recommendation, the parties are

20

notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within ten (10) days from the date of mailing of this report to the objecting party, <u>see</u> 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules. A party may respond to another party's specific objections within ten (10) days after being served with a copy thereof. <u>See</u> Fed. R. Civ. P. 72(b).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

United States Magistrate Judge

Norfolk, Virginia
July, 2009

21

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to the following:

Scott Bertram Elkind
801 Roeder Rd
Suite 550
Silver Springs, MD 20910
COUNSEL FOR PLAINTIFF

Mark Anthony Exley
United States Attorney Office
101 W Main St
Suite 8000
Norfolk, VA 23510
COUNSEL FOR DEFENDANT

Fernando Galindo, Clerk

By: _____
Deputy Clerk

July 2, 2009

22